## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Branch

v.

Kenyear

July 26, 1965

Case No. A-6955

BY JUDGE ALEX H. SANDS, JR.

This case resulting in a jury verdict for the plaintiff in the amount of $375.00 on June 30, 1965, is before the Court upon plaintiff's motion to set aside the verdict as being inadequate and to award a new trial upon the issue of damages alone.

*Facts*

A. *Negligence Aspects*

On March 7, 1964, at approximately 8:30 P.M., the plaintiff, a pedestrian, was struck and injured by defendant's vehicle while he was undertaking to negotiate a crossing from the northeast to the southeast corner at the intersection of First and Leigh Streets. While there is a vague statement of defendant to the contrary, the decided preponderance of the evidence is that plaintiff was in the pedestrian crosswalk and that he had nearly completed the crossing when he was struck down by defendant who was making a right hand turn from First Street to go east on Leigh Street. The jury verdict has established primary negligence of the defendant and freedom from contributory negligence of plaintiff and the evidence, as stated, abundantly supports this conclusion.

B. *Injury Aspects*

Prior to the accident in question plaintiff was the victim of three physical disabilities, (1) a double inguinal hernia which had been present for a long while but which was being controlled by the use of a truss, (2) a complication of the aorta and (3) an aneurism in the immediate vicinity of

the bowel. Without going into any detailed consideration of these conditions, suffice it to say that Dr. Eastham, who was in attendance during both of the two hernia operations, as well as the operation involving the removal of a gangrenous portion of plaintiff's bowel, testified emphatically that neither of these conditions nor the surgery necessitated thereby were in any manner causally connected with the accident nor is there a scintilla of evidence that plaintiff's heart condition was aggravated or affected by the accident.

Upon the present motion, therefore, the only injury which the Court can consider upon this motion is the pelvic fracture since there is ample evidence upon which the jury would have been justified in finding no causal connection between the accident and any other of plaintiff's infirmities.

This, then, narrows the issue to two considerations, i.e., whether in view of the nature and extent of the pelvic injury and the expense incident thereto the verdict was so inadequate that the Court would be justified in setting it aside.

Turning first to a consideration of the expense which was *necessarily* attributable to the pelvic injury, the X-ray bill of $10.00 for the March 19 X-ray of the pelvis, M.C.V. Emergency Room bill of $33.00 and private ambulance bill of $12.50, and Dr. Decker's charge of $45.00 for his service up to the time of the first hernia operation, are the only expenses which the jury *had* to accept as accident connected. They could well have believed from the testimony that *all* hospital charges were incurred in connection with conditions unrelated to the accident. While it is quite true that a part of these expenses could *properly* be attributable to the pelvic injury, the jury could have found otherwise.

So with that part of Dr. Decker's bill incurred subsequent to the first hernia operation, if the pelvic injury had been home treated, it is certain that some medical attention would have been required, but Dr. Decker testified that as to his services following the hernia operation that it was impossible for him to allocate any portion of it to treatment of the pelvic condition. The plaintiff's expenses incurred as a result of the pelvic injury which the jury *must* necessarily have accepted, therefore, amounted to $100.50.

As to the extent and duration of the injury itself, accepting that testimony most favorable to defendant which is required on this motion, Dr. Decker testified that this fracture was of a minor nature (Tr. 20), while Dr. Nachman testified that simple bed rest was the accepted treatment and that a man of plaintiff's age would be over most of the soreness and discomfort

in about three weeks, would be "getting around a little" in a month and in six to eight weeks the fracture would be healed and plaintiff able to walk without any difficulty. This is substantially in accord with Dr. Decker's testimony.

As to plaintiff's complaint to Dr. Decker of pain in his back, upon cross examination Dr. Decker admits (Tr. 17) that he does not recall that plaintiff made any complaint to him of back pain until August, some six months after the accident, and the jury could well have concluded that there was no causal connection between the complaint and the accident.

Is the verdict of $375.00 for a hairline pelvic fracture, a three weeks bed rest, and four to five weeks recuperative period together with the pain and suffering incident thereto so inadequate as to warrant the Court in disturbing the verdict?

Our Court of Appeals has said time and again that a trial court cannot disturb a verdict either because of its smallness or its largeness unless its inadequacy or excessiveness is so great as to show plainly that the verdict has resulted from (a) misconduct or (b) misconception, or both, upon the part of the jury. *Rawle v. McIlhenny*, 163 Va. 735, 744 (1934).

Is the size of the verdict in the case at bar so out of proportion with the injury and resulting expenses as to demonstrate the existence of either or both of these exceptions? A review of the cases in this jurisdiction where similar motions have been under consideration will be helpful.

The earliest Virginia case involving personal injury where the question came under review was *Howell v. Murdock*, 156 Va. 669 (1931). Plaintiff, who was free of contributory negligence as a matter of law, suffered a badly crushed ankle with compound fracture of the bones of the ankle joint, together with other injuries of less serious nature. She was confined to bed for three months and the medical testimony was that her injury was of a permanent nature. Her medical bills amounted to $295.00. A verdict of $300.00 ($5.00 more than her medical expense) was set aside as inadequate.

In *Rawle v. McIlhenny*, 163 Va. 735 (1934), a verdict of $1,500.00 was set aside as inadequate where the plaintiff had the ulna of her right arm broken which failed to heal properly necessitating a bone graft operation and which resulted in nine months of casts and splints and a year of almost complete loss of use of the arm with medical expense up to the time of trial (before the bone graft operation) of approximately $1,300.00.

In *Glass v. Pender Grocery Co.*, 174 Va. 196 (1939), plaintiff was almost totally incapacitated for eight months with "extensive injuries of a

most painful nature." The undisputed medical testimony was that a future operation necessitating several weeks hospitalization was indicated and ultimate recovery uncertain. She had already incurred nearly $1,000.00 medical expense with an additional expense of another $1,000.00 estimated for the future operation. A verdict of $3,000.00 was set aside as inadequate, and this action was affirmed by the Supreme Court.

In *Wright v. Estep*, 194 Va. 332 (1952), a verdict of $5,000.00 was set aside as inadequate where the evidence conclusively showed $2,400.00 medical expense and $3,600.00 loss of earnings or a total out-of-pocket loss of $6,000.00 up to date of trial. His spleen was bruised in the accident, became enlarged, ruptured, and had to be removed almost causing death upon the operating table and being followed by a chest abcess requiring three additional operations and eight weeks hospitalization.

On the other hand in *Chappell v. White*, 184 Va. 810 (1946), where the evidence on the issue of liability was sharply in dispute the trial court was held to have been in error in setting aside a verdict of $4,231.18 as inadequate even though plaintiff's injuries were two broken vertebrae causing permanent injury to the spinal cord and partial paralysis of both legs necessitating the use of crutches. The actual amount of out-of-pocket expenses does not appear in the opinion but in view of the nature of the injuries, they must have been substantial.

Again, in *Dalton v. Johnson*, 204 Va. 102 (1963), the refusal of the trial court to disturb a verdict of $5,000.00 as inadequate was upheld by the Supreme Court where there was a conflict in the evidence as to whether the plaintiff's brain damage was causally connected with the accident and where his knee injury, admittedly accident connected, resulted in an operation for removal of the medial meniscus cartilage, hospitalization incident thereto and $980.00 medical and $800.00 loss of earnings, or a total out-of-pocket expense of $1,780.00.

Finally and factually closest to the case at bar is *Bass v. Peterson*, 168 Va. 273 (1937). Plaintiff, who at the time of his accident was earning $125.00 to $150.00 per week, received a concussion, lacerations of scalp, laceration of the tongue and several teeth loosened, all admittedly accident connected. His complaints of severe back pains were challenged. Plaintiff remained in the hospital for nine days and was then discharged and advised by his doctor to "rest" for a period of time with no definite period designated. Upon this advice, plaintiff spent four months in Florida. A verdict of $450.00 was set aside by the trial court as inadequate and the

court, of its own motion, assessed damages for and entered judgment in the amount of $2,693.31.

The Supreme Court reversed the court not only upon the ground that it erred in assessing damages upon its own motion but also that it erred in disturbing the $450.00 verdict at all, saying:

> The jury was warranted in accepting the statements of defendant's medical witnesses that the plaintiff had suffered no permanent injuries, that his present injuries were negligible, and that his sojourn in Florida was, from a standpoint of health, unnecessary.

## Conclusion

In the light of the above authority which to some extent, at least, charts the course of the trial court to be followed upon a motion such as that now before the Court, while the verdict of $375.00 appears extremely small to the Court's way of thinking, it is not thought that it is so out of proportion with the nature of those injuries which the jury was required to find to be accident connected as to "clearly indicate" bias, prejudice, caprice, or misunderstanding upon the part of the jury.

For the above reasons, the motion to set aside the verdict will be overruled and judgment entered upon the verdict.